Sylvia D.Y. KIM, Plaintiff–Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellant.

No. 90–15691.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1991.

Decided Dec. 24, 1991.

Wayne H. Muraoka, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for defendant-appellant.

Janice P. Lim, Honolulu, Hawaii, for plaintiff-appellee.

Before ALARCON, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

State Farm appeals from an order denying its motion for summary judgment and granting Sylvia Kim's cross-motion for summary judgment. We reverse.

## BACKGROUND

The parties agree that no genuine issue of material fact exists. Sylvia Kim was seriously injured in an accident while riding in an automobile owned by her father, Edward Kim, and driven by her mother, Agnes Kim. The "accident vehicle" was insured by State Farm. State Farm paid Sylvia Kim $35,000, the limit for primary bodily injury under the liability insurance provision of the policy insuring the accident vehicle. Edward Kim also owns two other automobiles (the "non-accident vehicles"),

each of which is insured by State Farm under separate policies. Sylvia Kim brought this declaratory judgment action to establish that she is entitled to recover underinsured motorist ("UIM") benefits under the policies insuring the non-accident vehicles.[1]

UIM coverage is optional additional coverage which automobile insurance policyholders may purchase as a means of protecting themselves in the event they are injured by a motorist whose liability insurance policy is inadequate. *See Kang v. State Farm Mut. Auto. Ins. Co.*, 815 P.2d 1020, 1022 (Haw.1991); Haw.Rev.Stat. 431–448(b). The UIM provisions in the non-accident vehicles' policies required State Farm to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." There is no apparent dispute that Sylvia Kim was an "insured" under the non-accident vehicles' policies.[2] An "underinsured motor vehicle" is a vehicle "which is insured or bonded for bodily injury liability at the time of the accident ... whose limits of liability for bodily injury are less than the liability imposed by law for the insured's damages." There is no dispute that Sylvia Kim's injuries exceeded the $35,000 liability insurance coverage on the accident vehicle. The only dispute is whether the car Agnes Kim was driving was an "underinsured motor vehicle."

The non-accident vehicles' policies exclude from the definition of an "underinsured motor vehicle" any automobile which is "furnished for the regular use of you, your spouse or any relative." State Farm refused to pay benefits to Sylvia Kim on the ground that this clause excluded her, as a related member of the policyholder's household, from UIM benefits.

The district court concluded that the exclusionary clause's language "unambiguously excludes" Sylvia Kim from coverage "because she is a 'relative' of one to whom the automobile was furnished for

regular use." *Kim v. State Farm Mutual Automobile Insurance Co.*, 736 F.Supp. 218, 220 (D.Hawaii 1990). After reviewing the language and legislative history of Hawaii Revised Statutes § 431–448, the district court further concluded that "[b]ecause there is no explicit Hawaii statutory authority that permits the exclusion at issue, ... the exclusion[ary clause] ... violates the strong public policy of this state" favoring full compensation of accident victims with UIM coverage. *Id.* at 222. The district court held that the exclusionary clause was void as against public policy and granted summary judgment to Sylvia Kim.

## DISCUSSION

*Insurance Policy Interpretation*

 The language of the exclusionary clause should be construed according to its plain, ordinary, and accepted sense in common speech unless it appears that a different meaning was intended. *Hawaiian Ins. & Guar. Co. Ltd. v. Financial Sec. Ins. Co.*, 72 Haw. 80, 807 P.2d 1256, 1260 (1991). The plain language of the clause excludes any vehicle "furnished for the regular use of you, your spouse, or *any relative* ... (emphasis added)." There is no apparent dispute that the accident vehicle was furnished for Agnes Kim's regular use. The only potential ambiguity in this section of the exclusionary clause is the unidentified "you." Regardless of whether "you" refers to the policyholder, Edward Kim, or the claimant, Sylvia Kim, no genuine issue can exist as to the material fact that Agnes Kim is related to both. The accident vehicle, therefore, cannot be an "underinsured motor vehicle" under the policies insuring the non-accident vehicles. We agree with the district court's conclusion that, under the clear terms of the exclusionary clause, Sylvia Kim is not entitled to recover UIM benefits under the non-accident vehicles' policies.

---

1. Kim originally brought suit in state court. State Farm removed this action to federal court pursuant to 28 U.S.C. §§ 1332 and 1441.

2. The definition of an "insured" includes the spouse and all other relatives of the policyholder. "Relatives" are defined to include only those relatives who live with the policyholder, as Sylvia Kim does.

### Hawaii's Public Policy

■ In ruling that the exclusionary clause violated Hawaii's public policy, the district court acted without the benefit of the subsequent decision of the Hawaii Supreme Court in *Kang v. State Farm Ins. Co.*, 815 P.2d 1020 (Haw.1991). That case dealt with the same exclusionary clause and, indeed, the same accident as the case before us, but it presents the question of UIM coverage in a slightly different posture. Both sides attempt to draw support from *Kang*.

Lucy Kang and Sylvia Kim were injured in the same accident while both were riding in Agnes Kim's car. *Id.* at 1020. Kang, like Sylvia Kim, recovered the maximum benefits under the accident vehicle's liability insurance coverage and sued to collect UIM benefits. The principal difference between the present case and *Kang* is that Kang sought to collect UIM benefits using the UIM coverage *contained in the accident vehicle's policy, id.* at 1021, while Kim seeks to collect under a separate policy's UIM coverage.[3]

The *Kang* court held that Kang was effectively excluded from recovering UIM benefits by the provision in the exclusionary clause of the accident vehicle's policy which removes from the definition of an "underinsured motor vehicle" any automobile "insured under the liability coverage of this policy." *Id.* The Supreme Court also held that the exclusion did not conflict with the public policy underlying Hawaii Revised Statutes § 431–448(b). The court held that: (1) nothing in § 431–448 mandates "that a claimant be entitled to a dual recovery of liability and underinsured motorist benefits under a single policy," *id.* at 1022; (2) underinsured motorist coverage is different from and should not be treated like liability insurance, *id.* at 1022–23; and (3) nothing in the language or legislative history of § 431–448, or the precedents of Hawaii's courts, establishes "a blanket prohibition against any exclusion not specifically enumerated by the legislature." *Id.*

at 1023. The court concluded that "[b]y invalidating the contested policy exclusion in this case, this court would, in effect, eliminate the distinction between liability and underinsured motorist coverage and transform the inexpensive underinsured motorist coverage into the more expensive liability coverage." *Id.* at 1025.

The holding and rationale of *Kang* seem clearly to apply to the case before us despite the fact that Sylvia Kim relies on UIM coverage under a policy insuring a non-accident vehicle. First, it is apparent that *Kang* undermines one of the primary conclusions of the district court in our case. The district court opined that exclusions not affirmatively authorized by statute violated public policy; *Kang* held that there was no such blanket rule.

More important for our ultimate decision is the reasoning of *Kang* that to invalidate the exclusion would be to permit policyholders to substitute inexpensive UIM coverage for more expensive liability coverage. Thus a policyholder could elect to purchase only minimum liability coverage, secure in the knowledge that his or her UIM coverage would protect family members in the event of a severe accident for which the policyholder is liable. "Consequently, insurers would undoubtedly be compelled to increase the premiums for underinsured motorist coverage, thereby frustrating the legislative objective of optional [UIM] protection at the least possible cost." *Kang*, 815 P.2d at 1025. Thus, in the view of the Hawaii Supreme Court, there was in *Kang* not only an absence of public policy against State Farm's exclusionary clause, there was a public policy supporting it.

*Kang* involved only one policy, and our case involves more than one policy, all owned by the same policyholder. We cannot see how this distinction can lead to a different result if we accept, as we must, the rationale of the Hawaii Supreme Court in *Kang*. Were we to invalidate State Farm's exclusion in this case, it would

---

**3.** Kang collected $50,000 in UIM benefits under her own insurance policy with a different insurer.

cause the very mischief that the Hawaii Supreme Court strove to avoid in *Kang*. Edward Kim, as holder of three State Farm policies, would have succeeded in purchasing minimum liability coverage and in having his inexpensive UIM coverage do service as excess liability coverage. Other owners of multiple policies would have an incentive to do the same.[4] The increase in UIM premiums, and the frustration of Hawaii's public policy favoring inexpensive UIM options would suffer. All of the reasoning that led the Hawaii Supreme Court to its result in *Kang*, therefore, applies in the present case and dictates a like outcome.

The application of *Kang*'s reasoning to this case is so clear that one might well ask why we have belabored it a bit. The answer is that the *Kang* opinion referred to the district court's opinion in this case, *Kim*, and distinguished it in a way that gave heart to the plaintiff here. After describing the fact situation and the ruling of the district court in our case, the Hawaii Supreme Court said:

> *Kim*, however, is wholly inapplicable to the issue and public policy considerations now before this court.
>
> The federal district court in *Kim* was persuaded by the rationale of *State Farm Mutual Auto Insurance Co. v. Duran*, 163 Ariz. 1, 785 P.2d 570 (1989). In *Duran*, the Arizona Supreme Court invalidated an exclusionary clause identical to the one at issue in *Kim*. Like *Kim*, the exclusionary clause in *Duran* was contained in policies covering vehicles other than the accident vehicle and was held to be invalid on the identical grounds as in *Kim*.

*Kang*, 815 P.2d at 1024. The Hawaii Supreme Court went on to note that in *Duran*, the Arizona Supreme Court also upheld the exclusionary clause when the UIM benefits were sought under the *same* poli-

cy as that which provided liability coverage for the accident vehicle.

Understandably enough, Sylvia Kim argues that *Kang*'s discussion and distinction of her case, and the approving references to *Duran*, establish that the Hawaii Supreme Court would not uphold State Farm's exclusion in a two-policy case. We disagree.

First, *Kang*'s discussion of the district court's decision in *Kim* is dictum. More important, *Duran*'s holding invalidating the exclusion in the two-policy context was based on the Arizona Supreme Court's view that exclusions not affirmatively authorized by statute violated public policy.[5] The *Kang* opinion expressly rejected that proposition as a matter of Hawaii law. *Kang*, 815 P.2d at 1023.

Finally, and most important, in *Duran* the accident vehicle, unlike the accident vehicle in our case, was not owned by the injured party, her parents, or the owner of the policy under which UIM benefits were claimed. The ruling therefore did not have the effect of permitting a policyholder to convert his or her UIM coverage into liability coverage.

We cannot accept, therefore, the contention that the case before us may properly be decided under the principles of *Duran* rather than those of *Kang*. Nor can we discover any defensible rationale that would support a different result in our case from that in *Kang*. To the extent that dictum in *Kang* suggests that public policy considerations in our case differ from those in *Kang*, the dictum is not supported by *Duran* and is inconsistent with the reasoning in *Kang* that was essential to its result. The exclusion that was upheld in *Kang* must be upheld here.

## CONCLUSION

The summary judgment in favor of Sylvia Kim is reversed. The case is remanded

---

4. Our analysis is confined to cases where multiple policies are purchased by one decision-maker. We do not deal here with a household in which separate vehicles are covered by separate policies that were independently purchased by different family members or relatives. We ex-

press no opinion on the validity of the exclusion in those circumstances.

5. At the time of the accident in *Duran*, Arizona's statute made UIM coverage mandatory. *Duran*, 785 P.2d at 572 (1989) (citing Ariz. Laws 1981, ch. 224, § 1).

to the district court with instructions to enter summary judgment in favor of State Farm.

REVERSED and REMANDED with instructions.